## Hansford v. Commonwealth.

(Decided June 9, 1916.)

### Appeal from Whitley Circuit Court.

1. **Criminal Law—Trial—Sentence Prematurely Pronounced.—The** action of the trial court in pronouncing sentence upon defendant the same day upon which a verdict convicting him for false swear- ing was rendered, it appearing that the court was not about to adjourn for the term but in fact remained in session for a week later, was contrary to the provisions of section 283, Criminal Code, and would have compelled a reversal of the judgment, if there had been objection made and exception taken thereto by defendant at the time; but as this was not done the error cannot be reviewed by the Court of Appeals.

2. **Perjury—False Swearing—Evidence—Character of Accused.—In a** prosecution for false swearing, where defendant did not testify or put his character in issue, it was prejudicial error for the trial court to permit the Commonwealth to introduce proof attacking his reputation for truth and veracity.

3. **Perjury—False Swearing—Evidence—Sufficiency of to Convict** for False Swearing.—In order to convict one of the crime of false swearing, it is necessary that every fact essential to estab- lish his guilt be proven beyond a reasonable doubt, by the testi- mony of at least two witnesses, or one witness and strong cor- roborative circumstances.

4. **Perjury—False Swearing—Evidence—Sufficiency of.—In a prose-** cution for false swearing the indictment charged that defendant in testifying in another case had said he knew S., saw and talked with him on a certain day at the freight depot in Somerset and that he had dark hair and dark mustache, and it conclusively ap- pears from the evidence that in fact he stated that he did not know S., but talked to a man at the time and place indicated who he was told was S., and that man had dark hair and mustache. Held, that such evidence was insufficient to establish defendant's guilt and the trial court should have peremptorily directed a verdict of acquittal, as requested by defendant.

B. B. SNYDER, H. C. GILLIS and E. G. UNDERWOOD for appel- lant.

M. M. LOGAN, Attorney General, and D. O. MYATT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellant, John Hansford, was tried and con- victed in the Whitley circuit court under an indictment charging him with the crime of false swearing, his pun-

ishment being fixed by verdict of the jury and judgment of the court at confinement in the penitentiary not less than one year nor more than a year and one day. He has appealed and asks a reversal of the judgment upon the following grounds: (1) That there was no evidence to sustain the charge in the indictment; (2) that the trial court erroneously pronounced sentence upon him the same day the verdict was returned; (3) that the court erred in admitting incompetent evidence in behalf of the Commonwealth.

It appears from the record that the alleged false statements attributed to the appellant by the indictment were made by him as a witness in testifying for the defendant on the trial of J. H. Taylor in the Whitley circuit court under an indictment for the murder of Frank Sumner. The killing of Sumner took place in Pulaski county, but upon a change of venue the case was sent to and tried in the Whitley circuit court. It is alleged in the indictment that appellant "did wrongfully, wilfully, knowingly, feloniously, corruptly, falsely and fraudulently, after being duly sworn by F. D. Sampson to tell the truth, the whole truth, swear, give in evidence, say and state that he knew Frank Sumner and saw him in July, 1915, at the freight depot at Somerset and talked and conversed with him, and that said Sumner had dark hair and black mustache, which said statement was false and untrue and known by the defendant at the time to be false and untrue and the defendant knew at the time the truth to be that he did not know Frank Sumner and did not see Frank Sumner at the freight depot in Somerset in July, 1915, and did not converse with him, and that said Frank Sumner did not have dark hair or black mustache."

The second and third grounds urged for the reversal will be disposed of first. The question raised by the second ground is that the trial court erroneously pronounced sentence on the appellant on the day the verdict was returned. Section 283, Criminal Code, provides that upon verdicts of conviction in cases of felony the court shall not pronounce judgment until two days after the verdict is rendered, unless the court be about to adjourn for the term. It appears from the record here that sentence was passed upon the appellant before the filing of his motion and grounds for a new trial and he had until the end of the term to file such motion

and grounds. It also appears that the court was not about to adjourn for the term, indeed, that it did not do so for more than a week thereafter; consequently the action of the court in passing sentence upon appellant at the time indicated was contrary to the provisions of the section of the Code, *supra*. This error of the court would have compelled a reversal of the judgment if there had been objection made and exception taken thereto by the appellant at the time, but as this was not done the error cannot be reviewed by us. Blanton v. Commonwealth, 147 Ky. 812; Thompson v. Commonwealth, 123 Ky. 302; Buckles v. Commonwealth, 113 Ky. 795.

Appellant's third ground of complaint must prevail. The court in permitting the Commonwealth, over his objection, to introduce proof as to his reputation for truth and veracity, committed a reversible error. The appellant did not testify in his own behalf, nor did he introduce through other witnesses any evidence of his good character. This being true, the assault upon his character by the Commonwealth was forbidden by law. Section 223, subsection 1, Criminal Code, allows the defendant on trial, on his own request, to testify in his own behalf; but declares that his failure to do so shall not be commented upon or be allowed to create any presumption against him. Where the defendant avails himself of the privilege given him by the statute of testifying in his own behalf, he is then to be treated as any other witness and his general moral character, as well as his character for truth and veracity, may be put in issue by the state, although particular acts, whether good or bad, cannot be proved. But if the defendant has not testified, or put his character in issue, it is not permissible for the state to introduce evidence showing his bad character. Roberson's Crim. Law, vol. 2, section 972; Young v. Commonwealth, 6 Bush 312; Petty v. Commonwealth, 12 R. 919; Trusty v. Commonwealth, 19 R. 706; Macdonald v. Commonwealth, 86 Ky. 10; Lockard v. Commonwealth, 87 Ky. 201; Pace v. Commonwealth, 89 Ky. 204.

The remaining complaint, raised by the first ground urged by appellant for the reversal of the judgment of conviction, will require consideration of the evidence. The evidence relied on by the Commonwealth to show the crime falls short of proving it. The principal wit-

ness was Miss Minnie Murphy, the official stenographer of the court, who made stenographic notes of appellant's evidence when he testified as a witness on the trial of J. H. Taylor, and with these notes before her and the refreshing of her recollection from reading same before answering the questions propounded to her, she testified that on the trial of J. H. Taylor, appellant was asked the following questions, to which he gave the following answers:

"Q. Were you acquainted with Frank Sumner in his lifetime? A. No. Q. Did you see Frank Sumner last July or August, some time before the Judge's election in Pulaski county? A. I saw him last July, the man that they said was Frank Sumner; don't know whether it was him or not. Q. Where? A. Down at the freight depot in Somerset. Q. You say you didn't know Frank Sumner? A. No. Q. What kind of a looking man was he? A. Couldn't tell what size man he was, he was sitting, leaning back against a box on the platform; averaged size man looked like. Q. Describe him. A. Sorter of square shouldered, dark sandy headed feller. Q. Dark sandy, or dark? A. His hair was about like mine, and a black mustache."

Other witnesses introduced by the Commonwealth were J. A. Coleman, E. L. Stevens, J. L. Jasper, E. T. Thurman, J. Wes. Perkins and H. L. Morgan. Coleman testified that appellant in giving his testimony in the Taylor case described Sumner as a man with dark hair and black mustache; Stevens, that appellant was sworn by Judge Sampson before giving his testimony and that he detailed a conversation he claimed to have had with a man at the freight depot at Somerset two weeks before the killing; Jasper, that appellant described Sumner as a man whose mustache was black and hair dark brown; Thurman, that appellant described Sumner as having dark hair and black mustache; Perkins, that he described Sumner's mustache as black; and Morgan, that appellant described Sumner's hair as dark brown and mustache black.

The foregoing witnesses, except Miss Murphy and E. L. Stevens, testified that they knew Frank Sumner and that his hair and mustache were red. They did not testify, however, that the description otherwise given of him by appellant was not correct. Two witnesses, Van Houser and Gaybell, introduced for defendant,

testified that they knew Frank Sumner, that the natural color of his hair and mustache was red, but they had seen him at times when his mustache was dark or black, as if colored or dyed; and Gaybell's acquaintance with Sumner had covered a period of twenty-five years. Appellant was also allowed to introduce an affidavit of one, Allen Marlowe, an absent witness, which was read as deposition, and in which it was stated that he was well acquainted with Frank Sumner and had seen him at various times when his mustache was dark and had been painted with some sort of dye.

It should be kept in mind that the alleged false statements charged in the indictment were that appellant had said he knew Frank Sumner, saw and talked with him in July, 1915, at the freight depot in Somerset and that Sumner had dark hair and dark mustache. It will be observed from a careful reading of the evidence that none of the several witnesses introduced by the Commonwealth testified that appellant said he knew Frank Sumner. Moreover, Miss Murphy, the most important of them and the best qualified to state just what had been said by appellant as a witness in the Taylor case, because as official stenographer she had made a stenographic report of his entire testimony, the notes of which were before her in giving her testimony, stated that he positively said he did not know Frank Sumner; that he had been told the man whom he talked to in July 1915, at the Somerset freight depot, was Frank Sumner, but that he did not know whether it was Frank Sumner or not. It, therefore, conclusively appears from the Commonwealth's own evidence that there is no truth in the allegation of the indictment that appellant falsely stated that he knew Frank Sumner, or that he saw and talked with him at the depot in Somerset. In point of fact it was only shown by the evidence that he said he saw and talked at the time and place indicated, with a man he had been told was Frank Sumner, but whom he did not know to be Frank Sumner. These facts being established, it conclusively follows that the evidence also fails to show that appellant gave, as alleged in the indictment, a false description of Frank Sumner, if he said his hair was dark and mustache black. The description he gave was of the man he saw and talked with at the Somerset depot, whom he had previously been told was Frank Sumner, but did not know to be

Frank Sumner, which fact Miss Murphy, the official stenographer, testified he carefully explained at least twice in giving his testimony in the Taylor case. Besides, it appears from the testimony of Miss Murphy, that appellant, in describing the man with whom he talked at Somerset, did not mean to be understood as attempting an accurate description, for the circumstances forbade such accuracy because the man at the time of his conversation with him was sitting and leaning against a box on the platform and the best description he could give of him was a man of average size, "sorter square shouldered, dark sandy headed feller * * * his hair was about like mine, and a black mustache." There was no attempt made by the Commonwealth to show by its witnesses that the description thus given by appellant, except as to the color of the hair and mustache, did not fit Frank Sumner. But whether so or not, there is nothing in the evidence to show that it did not properly describe the man with whom appellant met and talked at the Somerset depot, though that man may not have been Frank Sumner.

The manifest error into which all the witnesses for the Commonwealth, except Miss Murphy, fell, arose out of their assumption that the man to whom appellant talked and whom he attempted to describe, was Frank Sumner, which assumption was unauthorized by any statement from appellant to that effect, for all he undertook to say, and did say, in testifying in the Taylor case, was that he had been informed that the man with whom he talked was Frank Sumner. In view of the circumstances attending appellant's meeting and talking with the man at the Somerset depot, the description he attempted to give of the latter does not, after all is said, so badly fit that given by the Commonwealth's witnesses of Frank Sumner, for if his hair was "sandy" or "dark," as stated by appellant, there is but little difference between the color of sandy hair and red hair, and the fact that his mustache was black may be accounted for by the testimony of Van Houser, Gaybell and Marlowe, who said that they had frequently seen Sumner when his mustache was black from hair dye. So, if Sumner were the person with whom appellant had the interview at Somerset, that may have been one of the occasions when the color of his mustache had been changed from its natural hue to black.

In order to convict the appellant for the crime of false swearing charged in the indictment, it was necessary that every fact essential to establish his guilt be proven by the evidence beyond a reasonable doubt, through the testimony of not less than two witnesses, or one witness and strong corroborating circumstances. As said in Walker v. Commonwealth, 162 Ky. 111, quoting with approval from Goslin v. Commonwealth, 121 Ky. 698:

"This wise old rule of the common law is one which this court has always recognized and enforced. It applies alike to prosecutions for false swearing and perjury, for those offenses are alike and the principles and policies of the law applicable to one, save where modified by statute, apply to the other."

The evidence furnished by the record here is wholly insufficient to establish the appellant's guilt, hence the trial court should have peremptorily directed a verdict of acquittal, as requested by him, at the conclusion of the evidence.

For the reasons indicated the judgment is reversed and cause remanded for a new trial consistent with the opinion.