### Viley v. Commonwealth.

(Decided October 5, 1926.)

### Appeal from Fayette Circuit Court.

1. Witnesses.—In prosecution for manslaughter, where defendant offered herself as witness, testimony tending to impeach her by proof of general reputation for immorality and untruthfulness held

not prejudicial error, in view of Civil Code of Practice, section 597.

2. Criminal Law—Remarks of Commonwealth's Attorney in Argument that Laws Make Criminals Held Not Prejudicial, in View of Court's Admonition.—Remarks of Commonwealth attorney in closing argument to jury that "these laws of ours themselves make criminals," or that "it is very difficult to convict persons charged with violations of the law, because the law itself throws so much protection around those charged with its violations," held not prejudicial, especially in view of court's admonition that jury were to try case on instructions given by court and not on remarks of Commonwealth's attorney.

J. J. McBRAYER for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellant and her husband had only been married a short time when she, in July, 1925, shot him with a twenty-two rifle, inflicting a wound in the neck from which he soon thereafter died. An indictment was returned accusing her of the crime of willful murder, to which she pleaded not guilty claiming that the killing was accidental. A trial resulted in her conviction of manslaughter and a sentence of fourteen years in the state penitentiary, from which she appeals.

The evidence shows that she and her husband lived in Lexington. They were young people. He was working regularly at one of the manufacturing establishments in the city. He was late coming home on the evening of the homicide and his wife became worried. According to the evidence for the Commonwealth she went to the home of neighbors and inquired for her husband and appeared to be out of humor because he had not come home and threatened to do him violence when he came. She called him bad names. Later as he approached the house she went to meet him with gun in hand and asked him where in the devil he had been, and when he said he had been at work she called him a liar and told him to leave and never come back, and, presenting the gun at him, fired, inflicting the wound which later resulted in his death. She testified that she was only playing with her husband at the time the gun was discharged and the wound inflicted. Several neighbors heard the conversation that occurred

just before the fatal shot was fired, and related it at the trial in substance as reiterated above.

She now asks a reversal of the judgment because she says that the trial court committed error to her prejudice in the admission of incompetent evidence against her and because the Commonwealth's attorney in the closing argument was guilty of improper conduct. The evidence of which she complains is that concerning her bad moral character. She offered herself as a witness in her own behalf and testified. In rebuttal the Commonwealth called several witnesses to impeach her by proof of general reputation for immorality and untruthfulness. This, she insists, was prejudicial error. The well established rule is that where a defendant, in a prosecution like the one now before us, offers himself as a witness in his own behalf he may be treated by the Commonwealth as other witnesses and impeached by showing that his reputation for untruthfulness and immorality is bad. Eversole v. Commonwealth, 157 Ky. 478; Lake v. Commonwealth, 209 Ky. 832; Taylor v. Commonwealth, 172 Ky. 136. By express provision of the Civil Code, section 597, a witness may be impeached by the party against whom he is produced by evidence that his reputation for untruthfulness and immorality renders him unworthy of belief, but evidence of particular wrongful acts may not be heard to discredit him. The trial court followed the general rule when it allowed the Commonweath to prove the general reputation of appellant for immorality after she had testified as a witness for herself.

Appellant insists that the words of the attorney for the Commonwealth, used in the closing argument to the jury, were these: "These laws of ours themselves make criminals; the bulwark of protection of the law thrown around criminals make criminals throughout the land," while the Commonwealth's attorney says that he did not make that statement, but in substance said: "It is very difficult to convict persons charged with violations of the law, due in part to the fact that the law itself throws so much protection around those charged with its violation." The trial judge who heard the argument made a note at the time of what was said, and it reads: "The protection thrown around criminals by the law makes criminals."

It makes little difference which statement was employed by the Commonwealth's attorney, for neither of them would have been prejudicial in this case. When objection was made to the statement of the Common-

wealth's attorney the trial judge admonished the jury, saying, "Whatever Mr. Kemper may think the law ought to be, the law upon which this case is being tried is the law set out in the instructions given you by the court, and the defendant is entitled to every protection of the law afforded by these instructions, and you will try this case upon the instructions given you by the court and not upon what Mr. Kemper may have told you." Mr. Kemper was the Commonwealth's attorney. Had the statement of Mr. Kemper been erroneous, or even prejudicial, we think the admonition of the court would have been sufficient to have set the jury aright and to have removed all prejudicial effect. There is, therefore, no merit in either of appellant's contentions, and the judgment is affirmed.

Judgment affirmed.